# EXHIBIT A

 

October 6, 2022

**VIA EMAIL**

Gregory Koch
Director, Information Management Office
ATTN: FOIA/PA
Office of the Director of National
 Intelligence
Washington, DC 20511
dni-foia@dni.gov

Public Interest Declassification Board
c/o Information Security Oversight Office
Washington, DC 20408
pidb@nara.gov

**VIA FEDEX**

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505

    Re:    **Freedom of Information Act Request**
                **Expedited Processing Requested**

To whom it may concern,

    The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute")[1] and the Committee to Protect

---

[1] The Knight First Amendment Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

Journalists ("CPJ")[2] submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records related to the killing of Jamal Khashoggi, including a report the Public Interest Declassification Board recommended that President Biden declassify in its entirety.

### I. Background

Jamal Khashoggi—a U.S. resident, *Washington Post* journalist, and prominent critic of Saudi Arabia—was killed in the Saudi embassy in Istanbul on October 2, 2018.[3]

The U.S. government has investigated Khashoggi's killing, including the role played by Saudi Arabia and its Crown Prince Mohammed bin Salman. Although two intelligence assessments based on the investigation were released in early 2021, a full U.S. intelligence report on the killing remains classified.[4] In addition, much of the evidence gathered in the investigation remains classified.[5]

In September 2020, Senator Chris Murphy asked the Public Interest Declassification Board ("PIDB") to review the full U.S. intelligence report on Khashoggi's killing and decide whether to recommend to President Biden that it be declassified.[6]

The PIDB is a panel of experts established by Congress to promote "the fullest possible public access to a thorough, accurate, and reliable documentary record of significant U.S. national security decisions and

---

[2] The Committee to Protect Journalists is an independent, nonprofit organization with headquarters in New York City. CPJ defends the right of journalists to report the news without fear of reprisal and promotes press freedom worldwide through research, international advocacy, and public education.

[3] Jared Malsin, *Saudi Crown Prince Says Khashoggi Was Killed 'Under My Watch'*, Wall St. J. (Sept. 26, 2019), https://perma.cc/6KRP-KQJP.

[4] Office of the Director of National Intelligence, *Assessing the Saudi Government Role in the Killing of Jamal Khashoggi* (Feb. 11, 2021), https://perma.cc/PZ8T-RJWH; National Security Council, *NICM 2020-005, Saudi Arabia: Crown Prince Probably Authorized Khashoggi Operation* (Feb. 7, 2020), https://perma.cc/P3JZ-PDZ6; Dustin Volz, *Biden Advised to Declassify Full Intelligence Report on Khashoggi Murder*, Wall St. J. (Sept. 20, 2022), https://perma.cc/2Z4J-WRS8.

[5] Julian E. Barnes and David E. Sanger, *Saudi Crown Prince Is Held Responsible for Khashoggi Killing in U.S. Report*, N.Y. Times (Feb. 26, 2021), https://perma.cc/W5JA-83HJ.

[6] Volz, *supra* note 3; Barnes and Sanger, *supra* note 4.

activities."[7] Of the PIDB's nine members, five are appointed by the President, and one each by the Speaker and Minority Leader of the House, and the Majority and Minority Leaders of the Senate.[8]

The PIDB completed its review in June 2022 and voted unanimously to recommend that the report be "declassified in its entirety."[9] Despite the Board's recommendation, President Biden has not declassified the report.[10]

## II. Records requested

The Knight Institute and CPJ seek the following records:

1. All records related to the killing of Jamal Khashoggi that the Public Interest Declassification Board ("PIDB") recommended be declassified.

2. All correspondence in which the PIDB concluded or recommended that records related to the killing of Jamal Khashoggi should be declassified.

Where a record contains information that falls into either of the categories described above, we seek the entirety of that document. We ask that you disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b). We also ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B). If the records are not producible in that format, please provide the records electronically in a text-searchable, static-image format (*e.g.*, PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

## III. Application for expedited processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the records sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

---

[7] *Public Interest Declassification Board*, National Archives, https://perma.cc/6ZYX-D32W.

[8] *Public Interest Declassification Board (PIDB) – Members*, National Archives, https://perma.cc/SJ9C-PKNP.

[9] Volz, *supra* note 3 (stating that the PIDB notified Senator Murphy via letter that it had completed its review of the Khashoggi report and that it had voted to recommend the file be "declassified in its entirety").

[10] *Id.*

### A. *The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight First Amendment Institute was established at Columbia University to defend and strengthen the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission.[11] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute performs. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (quoting *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003))).[12]

For example, the Institute disseminates information about government activity—including information about government activity obtained under FOIA—through a variety of means, including its website,[13] Twitter account,[14] press releases,[15] blog posts,[16] op-eds,[17] and

---

[11] *See About the Knight Institute*, Knight First Amendment Inst., https://perma.cc/8UYT-RUUZ.

[12] *See id.* (explaining that a priority of the Knight Institute's work is "ensuring access to information necessary for self-government").

[13] *See* Knight First Amendment Inst., https://knightcolumbia.org.

[14] *See* Knight First Amendment Inst. (@knightcolumbia), Twitter, https://twitter.com/knightcolumbia (Knight Institute account with over 14,000 followers).

[15] *See, e.g.*, *Knight Institute Calls on DOJ's Executive Office for Immigration Review to Suspend Policy Silencing Immigration Judges*, (Jan. 6, 2020), https://perma.cc/GT69-A8SC (describing an agency policy obtained through FOIA).

[16] *See, e.g.*, Anna Diakun, *Redactions in CDC Communications Policies Leave Key Questions Unanswered*, Knight First Amendment Inst. (June 12, 2020), https://perma.cc/GQX3-WKCN; Stephanie Krent, *Recently Released OLC Opinions from 1974 Shed Light on Current Legal Debates*, Knight First Amendment Inst. (May 18, 2020), https://perma.cc/34N2-UAQ3.

[17] *See, e.g.*, Anna Diakun, *Biden Promised Transparency. Has He Delivered?*, CNN (Jan. 21, 2022), https://perma.cc/J2XX-8HDQ; Anna Diakun & Trevor Timm, *For the Biden Administration, Who Counts as News Media?*, Colum. Journalism Rev. (June 9, 2021), https://perma.cc/PR7T-75FQ; Jameel Jaffer & Ramya Krishnan, *We May Never See John Bolton's Book*, N.Y. Times (Jan. 30, 2020), https://perma.cc/HGY9-638T.

regular engagement with the press.[18] The Institute also publishes records obtained through FOIA in "Reading Rooms" on the Institute's website, which allow the public to search, filter, and view the records.[19]

Through its research program, the Institute has published multiple influential essay series, including one focused on reimagining the First Amendment in the digital age, one addressing the technology giants' power to shape public discourse, and another on the relationship between big data and self-government.[20] In addition, the Institute has convened five research symposia—drawing practitioners, lawyers, academics, and journalists—to debate, discuss, and reflect on key issues in First Amendment doctrine and free speech theory. The first, "A First Amendment for All? Free Expression in an Age of Inequality," was held in March 2018;[21] the second, "The Tech Giants, Monopoly Power, and Public Discourse," was held in November 2019;[22] the third, "Data and Democracy," was held virtually in October 2020;[23] the fourth,

---

[18] *See, e.g.*, Nilay Patel, *Can We Regulate Social Media Without Breaking the First Amendment?*, The Verge (Dec. 16, 2021), https://perma.cc/JKC8-VDBV (discussing Knight Institute amicus brief in lawsuit challenging Florida social media regulations); Jessica Jerreat, *CDC Media Guidance Blacklists VOA Interview Requests,* VOA News (June 14, 2020), https://perma.cc/2KVX-WGYR (reporting on CDC email obtained by the Knight Institute under FOIA); Ellen Nakashima, *U.S. Spy Agencies Sued for Records on Whether They Warned Khashoggi of Impending Threat of Harm*, Wash. Post (Nov. 20, 2018), https://perma.cc/C6CW-TSDA (describing FOIA lawsuits); Cora Currier, *Government Can Spy on Journalists in the U.S. Using Invasive Foreign Intelligence Process*, Intercept (Sept. 17, 2018), https://perma.cc/YQ7F-NZ5R (reporting on DOJ rules obtained by the Knight Institute under FOIA); Charlie Savage, *U.S. Government Went Through These People's Phones at the Border. Read Their Stories.*, N.Y. Times (Dec. 22, 2017), https://perma.cc/H7P2-RK2T (describing and publishing several hundred complaints obtained by the Knight Institute about warrantless searches of electronic devices at the border).

[19] *See, e.g.*, *The OLC's Opinions*, Knight First Amendment Inst., https://knightcolumbia.org/reading-room/olc-opinions; *Ideological Screening at the Border*, Knight First Amendment Inst., https://knightcolumbia.org/reading-room/ideological-screening-at-the-border.

[20] *See Research*, Knight First Amendment Inst., https://perma.cc/TVD9-39RK.

[21] *A First Amendment for All? Free Expression in an Age of Inequality*, Knight First Amendment Inst. (Mar. 23, 2018, 8:30 AM); https://perma.cc/DM59-74KG.

[22] *Leading Legal Scholars, Economists, and Technologists to Headline Fall Symposium*, Knight First Amendment Inst. (Jan. 8, 2020), https://perma.cc./86DE-TPQS.

[23] *Data and Democracy*, Knight First Amendment Inst., https://perma.cc/2ARV-CUTY.

"Reimagine the Internet," was held virtually in May 2021;[24] and the fifth, "Lies, Free Speech, and the Law," was held in February 2022.[25]

### B. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

The records sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the requested records are necessary for a public evaluation of the U.S. government's efforts to investigate and hold accountable those responsible for the killing of Jamal Khashoggi.

Information relating to the circumstances of Khashoggi's death, and the adequacy of the government's response remain subjects of significant public interest and debate.[26] But the public is unable to meaningfully evaluate the U.S. government's investigation or response without complete, reliable information about the circumstances of the killing. Considering that Khashoggi was a U.S. resident and journalist who was killed by agents of a foreign power seeking to silence his voice, the public has a right to understand what the U.S. government is doing to uphold human rights, freedom of the press, and the rule of law in this context.

For these reasons, the Knight Institute is entitled to expedited processing.

## IV. Application for waiver or limitation of fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

---

[24] *Reimagine the Internet*, Knight First Amendment Inst., https://perma.cc/7CNP-5F2S.

[25] *Lies, Free Speech, and the Law*, Knight First Amendment Inst., https://perma.cc/KC3M-7475.

[26] *See, e.g.*, *Saudi Prince Has Immunity in Khashoggi Killing Lawsuit, Say Lawyers*, Reuters (Oct. 3, 2022), https://perma.cc/6PAW-8RXA; Mili Mitra, *A Look at the World Leaders Who Have Cozied Up to MBS*, Wash. Post (Sept. 29, 2022), https://perma.cc/V5D8-LSXE; Karen Attiah, *Jamal Khashoggi and Lessons on Standing Up to Power*, Wash. Post (Sept. 30, 2022), https://perma.cc/U3CP-KDAX; David Ignatius, *4 Years After Khashoggi's Murder, Assaults on Press Freedom Are Getting Worse*, Wash. Post (Sept. 28, 2022), https://perma.cc/V2MB-DQHH.

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. As described above, the Institute's research program brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms, including in scholarly publications and in short-form essays.

The Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative[] of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Institute meets the statutory definition of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. v. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." *See, e.g.*, *Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d

52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

\*   \*   \*

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of it.

/s/ *Scott Wilkens*

Scott Wilkens
Alexia Ramirez
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

/s/ *Sherif Mansour*

Sherif Mansour
Middle East and North Africa
  Program Coordinator
Committee to Protect Journalists
The John S. and James L. Knight
Foundation Press Freedom Center
P.O. Box 2675
New York, NY 10108